USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 9-16-11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VIERLING COMMUNICATIONS GMBH,

                Plaintiff,

      -against-

THOMAS STROYLS,
USNETSERVE.COM, INC.,
and VIERLING NORTH AMERICA, INC.,

                Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

09 Civ. 6654 (CS) (GAY)

TO THE HONORABLE CATHY SEIBEL, United States District Judge:

      Plaintiff, Vierling Communications GMBH ("VC"), commenced this action against Thomas Stroyls ("Stroyls"), USNetserve.com, Inc. ("USN"), and Vierling North America, Inc. ("VNA #2") for breach of contract, breach of fiduciary duty, unjust enrichment, goods sold and delivered, and fraud. On May 28, 2010, Your Honor entered a default judgment against the defendants and referred this matter to the undersigned to report and recommend the amount of damages to be awarded plaintiff. In response to my directions, both plaintiff and defendants filed timely written inquest submissions. I also held a hearing on August 12, 2011, where both parties presented their respective positions. For the reasons that follow, I respectfully recommend that Your Honor award plaintiff damages in the amount of $520,100.40 plus prejudgment interest.

1

**I. Default Judgment**

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). However, "[w]hile a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). As to the calculation of damages, plaintiff is entitled to all reasonable inferences from the evidence it offers. See Au Bon Pain, 653 F.2d at 65 (internal citation omitted).

**II. Facts**

(a) <u>The Parties</u>

The plaintiff, VC, is a German company engaged in the business of marketing telecommunications products for the Vierling Group. (Compl. ¶¶ 5, 9.) In August 2003, VC engaged defendant Stroyls' services for the purposes of developing its presence in the United States. (Id. at ¶¶ 11-14.) In furtherance of their agreement, Stroyls incorporated Vierling North America, Inc. ("VNA #1") in Delaware. (Id. at ¶ 21.) VC was the sole shareholder of the newly formed corporation while Stroyls served as a director and executive. (Id. at ¶ 22.) Stroyls was also the owner, director, and principal executive of defendants USN and VNA#2. (Id. at ¶¶ 7, 84.) Both entities are now defunct Delaware corporations. (Id. at ¶¶ 7, 8.)

(b) <u>USN And Stroyls Breach Of Contract</u>

In October 2005, VC shipped its first products to the United States. (Id. at ¶ 36.)

2

Under the operative billing procedures, the merchandise was sent directly from Germany to the end customer. (Id.) These sales were invoiced to Vierling North America, Inc. (VNA#1). (Id.) On or about November 15, 2005, VC, USN, and Stroyls entered a contract whereby defendants agreed to act as VC's agents for the telecommunications equipment plaintiff sold in the United States. (Id. at ¶¶ 37, 119.) Pursuant to the agreement, USN and Stroyls assumed responsibility for invoicing as well as collecting payments from the customers who received VC's products. (Id.) Defendants were required to bill customers and remit to plaintiff, at a minimum, the value of the invoices VC submitted to VNA#1. (Id.) USN and Stroyls were also permitted to charge end customers an additional margin above the price VC invoiced VNA#1. (Id. at ¶ 38.) The margin, subject to the agreement of both parties, was intended to cover the expenses associated with the development of a United States market for VC's products. (Id.) This agreement remained in effect until July 31, 2006, when USN and VC terminated their agency relationship. (Id. at ¶¶ 43, 88, 94.)

From January 1, 2006 until July 31, 2006, VC invoiced VNA#1 $367,407.17 for the products it shipped to the United States. (Id. at ¶ 44; Diehl Decl. ¶ 10.) Pursuant to their agreement USN and Stroyls invoiced the end customers at least $367,407.17. (Compl. ¶ 45.) However, to date VC has only received a total of $23,853.57 from USN and Stroyls in satisfaction of their obligations.[1] (Id. at ¶ 71; Diehl Decl. ¶ 10.) As such, USN and Stroyls breached their contract with VC by failing to collect or remit the outstanding balances on the invoices submitted to end customers. (Compl. ¶¶ 72, 120-

---

[1] VNA#2 remitted an additional $1,525.00 in satisfaction of USN's outstanding invoices. This money was credited towards the unpaid invoices.

3

21.)

### (c) VNA#2 And Stroyls Breach Of Contract

Following the termination of USN's agency relationship, the parties reached a new arrangement for the sale of VC's equipment in the United States. (Id. at ¶¶ 88-89.) As relevant to this inquest, on July 31, 2006, Stroyls and Vierling North America, Inc. entered a contract to purchase equipment from VC. (Id. at ¶ 132.) Pursuant to this agreement, the purchased equipment was shipped directly to end customers in the United States while the sales were invoiced to Vierling North America, Inc. (Id. at ¶¶ 88, 90, 132.) Around the same time that the parties entered this contract, Stroyls incorporated defendant Vierling North America, Inc.[2] (VNA#2). (Id. at ¶ 73.) Unbeknownst to VC, in September 2006 VNA#2 usurped the identity of VNA#1. (Id. at ¶ 86.)

From September 15, 2006 until January 12, 2007, Vierling North America, Inc., in actuality VNA#2, and Stroyls purchased equipment from VC valued at $330,470.80. (Id. at ¶ 90; Diehl Decl. ¶ 11.) Plaintiff invoiced and delivered the goods in conformance with its contractual obligations. (Compl. ¶¶ 89, 133.) However, VNA#2 and Stroyls only remitted $153,924.00 in satisfaction of the outstanding invoices. (Id. at ¶ 94; Diehl Decl. ¶ 11.) Accordingly, VNA#2 and Stroyls breached their contract with VC by failing to remit the unpaid balances for the equipment they purchased. (Compl. ¶ 134.)

## III. Damages

The parties agree that New York law governs this dispute. Therefore, any

---

[2] Note that VNA#1 and VNA#2 were both Delaware corporations bearing the same name.

"damages [award] for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003). See Scholastic, Inc. v. Snap TV, Inc., No. 09 Civ. 4349, 2011 WL 1330246, at *3 (S.D.N.Y. Apr. 8, 2011).

(a) Damages Attributable To USN And Stroyls

VC seeks $343,553.60 in compensatory damages from USN and Stroyls for breach of contract. (Diehl Decl. ¶ 10.) This figure represents the money that defendants failed to collect from end customers and/or remit to VC as was required under the operative agreement. Plaintiff's damages calculation is supported by an affidavit from Dr. Markus Diehl. Dr. Diehl affirms that VC invoiced VNA#1 a total of $367,407.17 for the products it shipped to end customers. (Id. at ¶ 10.) Dr. Diehl further attests that defendants only remitted $23,853.57 thus, confirming that USN and Stroyls failed to collect or remit $343,553.60 as was required. (Id.)

The figures underlying plaintiff's damages calculations were derived from an analysis of the operational documents associated with the transactions at issue. (Id. at ¶¶ 14-15, 18, 20. See id. at Ex. D.) These documents include the invoices, customer purchase orders, confirming correspondence, as well as shipping and customs forms from the relevant period. (Id. at ¶ 18.) The sums derived from the operational documents were then verified by VC's accounting records. (Id. at ¶¶ 14-15, 21.) After reviewing Dr. Diehl's methodology and results this Court is satisfied with the veracity of plaintiff's damages calculations. Accordingly, I respectfully recommend that judgment be entered against USN and Stroyls jointly and severally in the amount of $343,553.60.

See NYKCool A.B. v. Pac. Fruit Inc., No. 10 Civ. 3867, 2011 WL 3666579, at *3 (S.D.N.Y. Aug. 9, 2011)("[j]oint and several liability properly is imposed where two parties to a single contract promise the same performance to the same promisee").

(b) Damages Attributable To VNA#2 And Stroyls

Plaintiff also seeks $176,546.80 in compensatory damages from VNA#2 and Stroyls for breach of contract. (Diehl Decl., ¶ 11.) This figure constitutes the outstanding balances owed by VNA#2 and Stroyls for the products they purchased from VC. In his declaration, Dr. Diehl affirms that VC invoiced VNA#2 $330,470.80 and that defendants only remitted $153,924.00 in satisfaction of these invoices. (Id.) Dr. Diehl ascertained these figures by applying the same analysis he employed in discerning the damages attributable to USN and Stroyls' breach of contract. Accordingly, after reviewing Dr. Diehl's methodology and results this Court concurs with plaintiff's damages calculation. For the foregoing reasons, I respectfully recommend that judgment be entered against VNA#2 and Stroyls jointly and severally in the amount of $176,546.80. See NYKCool A.B., 2011 WL 3666579, at *3.

(c) Stroyls' Damages Arguments

(i) The Invoice And Remittence Agreement

As an initial matter, Stroyls has not disputed the fact that defendants failed to remit the $520,100.40 plaintiff seeks to recover. Instead, he contends that under the operative agreements defendants were not required to remit the disputed funds. Specifically, Stroyls maintains that the parties agreed that the "[p]laintiff would ship legacy equipment for sale by me and I would retain the revenue from the sale in order to pay expenses associated with the development and launch of the product." (Stroyls

6

Affirm ¶ 13.) As a corollary, Stroyls claims that defendants were not required to remit the $520,140.00 at issue because the money was spent on developing a market for VC's products. (Id. at ¶¶ 21, 24, 34.)

However, the complaint, whose allegations are accepted as true, posits that the defendants were required to remit funds that equaled the value of the invoices VNA#1 and VNA#2 received from VC. (Compl. ¶¶ 37, 95, 132, 134.) See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)(court is required to accept all of plaintiff's factual allegations as true in light of defendant's default). The only money that the parties agreed to apply towards the development of a new market was the margin over the invoice price. (Id. at ¶ 38.) Given these allegations, Stroyls' description of the billing arrangement is foreclosed by the entry of a default judgment.

Stroyls also seeks to reduce any potential award by redefining the remittance agreements between the parties. Along these lines, he argues that defendants were only required to remit those funds that represented VC's transfer costs. (Stroyls Affirm ¶¶ 22, 34.) As such, any damages award should be calculated based on VC's transfer costs rather than the balances on the unpaid invoices. However, in the complaint plaintiff alleged that defendants were obligated to remit funds that equaled the value of the invoices Vierling North America, Inc. received from VC. (Compl. ¶¶ 37, 95, 132, 134.) Since a default judgment was entered, plaintiff's description of the operative pricing scheme controls. See Finkel, 577 F.3d at 84. Plaintiff has also submitted an affidavit that refutes Stroyls' transfer cost argument. (Peter Decl. ¶¶ 6-11.) In light of the complaint and plaintiff's affidavit, Stroyls' attempt to redefine the defendants' remittance obligations is unavailing.

(ii) <u>Offsets</u>

Defendant further claims that any damages award is subject to substantial offsets. Initially, Stroyls contends that he is entitled to an approximately $434,350.00 offset, representing the amount of funds he remitted to plaintiff. (Stroyls Affirm ¶ 10.) However, after reviewing VC's accounting records, the Court is satisfied that plaintiff adequately accounted for these funds in calculating its damages. (<u>See</u> Diehl Decl. ¶¶ 15-17; <u>Id</u>. at Ex. C.)

Stroyls also claims that any damages award should be reduced by $100,000.00.(Stroyls Affirm ¶ 10.) This figure represents the value of VC's equipment that defendant is prepared to return to plaintiff. (<u>Id</u>.) Initially it is unclear whether the equipment was provided to Stroyls pursuant to arrangements outside the transactions at issue and free of charge. (Diehl Decl. ¶ 14.[3]) Given this ambiguity, it would be unjust to reduce plaintiff's award by the value of equipment that was potentially furnished to Stroyls outside of the transactions at issue and at no cost. Moreover, the equipment in Stroyls' possession is worthless to plaintiff as VC assigned its rights in the machinery to another company. (<u>Id</u>. at ¶ 15.) Accordingly, plaintiff's award should not be reduced by $100,000.00.

The remaining proposed offsets center around VC's failure to reimburse Stroyls for his fees and expenses as was allegedly required by the parties' agreements. (Stroyls Affirm ¶ 10.) Thus, these offsets are essentially counter claims for breach of contract. Since Stroyls failed to assert these counterclaims in a timely responsive pleading, he is

---

[3] Diehl declaration dated August 31, 2010.

foreclosed from raising them during the damages inquest. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 159-60 (2d Cir. 1992).

Moreover, there is a dearth of reliable evidence that VC was actually obligated to compensate Stroyls for the fees and expenses he claims as offsets. Stroyls' offset argument primarily relies on an inapplicable contract, standalone spreadsheets, an accountant's report, and an "account status report." For the reasons set forth below these documents do not support his claims. The contract cited by Stroyls in support of his position is an agreement between David Stroyls and Vierling North America, Inc. (Stroyls Affirm at Ex. C.) As plaintiff was not a party to the agreement, they are not bound by the obligations flowing from the contract. (Id.) Accordingly, defendant cannot claim as an offset the money that he is owed by an entity other than the plaintiff.

The standalone spreadsheets, itemizing the fees and expenses plaintiff purportedly owes Stroyls, are similarly inapposite. (Stroyls Affirm at Exs. D, E.) These documents are critically flawed because they lack any context. It is not clear if the spreadsheets are business records or simply documents that defendant prepared for this litigation. Stroyls also has not included any evidence that plaintiff was the entity actually responsible for the monetary obligations contained in the spreadsheets. Given these deficiencies, plaintiff's award should not be reduced by the sums contained in the spreadsheets.

Likewise, the accountant's report relied on by Stroyls does not support his offset claim. (Stroyls Affirm at Ex. F.) The report pertains to a period prior to the transactions at issue. (Id.) Assuming *arguendo* that the accountant's report accurately reflects the financial relationship between the parties, defendants are still not entitled to a reduction

9

in the damages award based on events that transpired prior to the time period at issue.

The "account status report", reportedly reflecting the value of plaintiff's outstanding obligations to Stroyls, also does not necessitate a reduction of VC's damages award. (Stroyls Affirm at Ex. J.) In an affidavit, the Managing Director of VC explained that the "account status report", which was prepared by a VC salesman, was an advocacy rather than an accounting document. (Peter Decl. ¶ 18.) Thus, the status report does not accurately reflect VC's debts, if any, to Stroyls. As such, plaintiff's damages award should not be discounted by the figures in the "account status report."

Finally, the complaint, whose allegations control, claims that during the relevant time Vierling North America, Inc. was actually responsible for Stroyls' fees and expenses. (Compl. ¶ 38.) See Finkel, 577 F.3d at 84 (court is required to accept all of plaintiff's factual allegations as true in light of defendant's default). When coupled with the deficiencies in Stroyls' evidence, the allegations in the complaint counsel against reducing plaintiff's damages award by defendant's proposed offsets.

(d) Interest[4]

VC also seeks an award of prejudgment interest pursuant to N.Y. C.P.L.R. § 5001. Under New York law, which both parties agree controls, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." United States Naval Inst. v. Charter Commc'ns, Inc., 936 F.2d 692, 698 (2d Cir. 1991). The interest rate is affixed at "nine percent per annum, to be calculated from the earliest ascertainable date on which the cause of action existed." Conceria Vignola SRL v. AXA

---

[4] The defendants have not challenged the interest periods proposed by the plaintiff.

10

Holdings, No. 09 Civ. 6684, 2010 WL 3377476, at *4 (S.D.N.Y. Aug. 3, 2010). As relevant to this case, where the damages "were incurred at various times" interest may be computed "upon all of the damages from a single reasonable intermediate date." See N.Y. C.P.L.R. § 5001(b); Langenberg v. Sofair, No. 03 Civ. 8339, 2006 WL 3518197, at *7 (S.D.N.Y. Dec. 7, 2006). Courts are ultimately vested with broad discretion in "determining a reasonable date from which to award pre-judgment interest." Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994).

Here, VC requests an award of prejudgment interest against USN and Stroyls computed from February 1, 2007. The last of the invoices that serve as the basis for plaintiff's claim against USN and Stroyls were issued prior to July 31, 2006. (Compl. ¶¶ 43-45.) USN and VC also terminated their agency relationship on July 31, 2006. (Id. at ¶ 94.) Therefore, February 1, 2007, six months after the last invoice was sent and the parties terminated their relationship, represents a reasonable intermediate date for calculating interest. See Conceria Vignola SRL, 2010 WL 3377476, at *4-*5 (reasonable to calculate prejudgment interest from the midpoint of outstanding invoices); Nuera Commc'ns, Inc. v. Telron Commc'ns USA, Inc., No. 00 Civ. 9167, 2002 WL 31778796, at *4 (S.D.N.Y. Nov. 15, 2002)(same). Accordingly, plaintiff is entitled to an award of prejudgment interest at a rate of nine percent per annum, accruing from February 1, 2007 until the entry of judgment, on the amount of $343,553.60.

Plaintiff also seeks an award of prejudgment interest against VNA#2 and Stroyls calculated from August 1, 2007. VC sent its last invoice to VNA#2 on January 12, 2007. (Compl. ¶ 89.) Thus, August 1, 2007, more than six months after VC issued its last invoice, represents a reasonable intermediate date for computing interest. See Conceria

11

Vignola SRL, 2010 WL 3377476, at *4-*5 (reasonable to calculate prejudgment interest from the midpoint of outstanding invoices); Nuera Commn's, Inc., 2002 WL 31778796, at *4(same). Accordingly, plaintiff is entitled to prejudgment interest at a rate of nine percent per annum, accruing from August 1, 2007 until the entry of judgment, on the amount of $176,546.80.

## IV. Conclusion

For the foregoing reasons I recommend that plaintiff be awarded the following:

(1) damages against USN and Stroyls, jointly and severally, in the amount of $343,553.60 plus interest calculated at a rate of nine percent per annum accruing from February 1, 2007 until the entry of judgment; and

(2) damages against VNA#2 and Stroyls, jointly and severally, in the amount of $176,546.80 plus interest calculated at a rate of nine percent per annum accruing from August 1, 2007 until the entry of judgment.

## V. Notice

Pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(a), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Cathy Seibel, United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Cathy Seibel and not to the undersigned.

Dated: September 14, 2011
White Plains, New York

Respectfully Submitted:

GEORGE A. YANTHIS, U.S.M.J.